23-14095, Nakia Courtney Hamilton v. U.S. Attorney General Good morning, Chief Justice, Your Honors, and may it please the Court, my name is Daniela Van Such and I represent the petitioner Nakia Hamilton. I will be addressing whether BIA erred in denying the motion to reopen for the petitioner to pursue a 212H waiver. As it involves the denial of a motion to reopen and questions of law, standard review is abuse of discretion and de novo. This Court should grant this petition and remand the case to the BIA for two reasons. First, a defective NTA does not initiate proceedings under INA 212H. And second, the petitioner diligently pursued its rights and exceptional circumstances warranted an equitable tolling of the motion to reopen. When you say on the diligence point, the removal order was entered in August of 2017 and the third motion to reopen was filed in August of 21. So, that's about a four-year span. In the meantime, there was a first motion to reopen denied, no appeal to the BIA. A year later, a second motion to reopen. The BIA affirms and then the 11th Circuit denies the petition. And then four years later, there's the third motion to reopen. Yes, Your Honor. That's not the sort of typical procedural timeline that one would find an abuse of discretion for on a third motion to reopen. Yes, Your Honor. The thing is that Nish Chavez created a new law. And the third motion to reopen was established and argued based on that change of law. So, yes, the procedural history is a little messy in this case. But the last motion to reopen is based on that change circumstances, which do warrant equitable tolling, which turning to initiation of proceedings with a defective NTA. Under INA 212H, if a person needs to reside in the United States for a lawfully reside for seven years before the initiation of removal proceedings to be barred from obtaining this waiver. This tells us that there's a clock that starts at lawful status and it ends when the government initiates removal proceedings. Any case law that's out there that deals with this issue specifically deals with that something related to this issue has dealt with when the lawful status begin. There is no case at hand that talks of when the clock stops, which is the case that we have at hand here today. And because this is a specific statute, the bars based on criminal background in the immigration context, then we must look at immigration law to determine if Congress established what initiation of removal proceedings means within the INA. Can I ask you a question about the ultimate relief you're seeking? Doesn't your client have to, among other things, if you get the motion to reopen granted, doesn't the petitioner have to lack an aggravated felony? And doesn't your client have an aggravated felony which bars relief? No, Your Honor. In this case, for it to be considered aggravated felony has to be a crime of violence as well as the conviction have to be over a year. He was only convicted to two days, so it's not an aggravated felony. So he doesn't bar. What was your client convicted of? Aggravated battery. And that's not an aggravated? Not under immigration law, Your Honor, no. Felony? Because the conviction was less than a year. You mean the time imposed was less than a year? Yes. And immigration law, in your view, always has that requirement of requiring a sentence of over a year? For a crime of violence, yes, it's a two-part for aggravated felony. It's an aggravated crime of violence with over a year of conviction. So the second part is not met in this case, and it doesn't disqualify for that reason. We're asking this court really to just do a plain language and plain reading of the statute. When we look at if there's anywhere else where initiation of removal proceedings have been used, there's a statute, specifically 8 U.S.C. 1229, titled Initiation of Removal Proceedings, which gives us all the outlines and everything that the notice to appear needs to include. And based on Nis-Chavez and Pereira, the Supreme Court has established that these requirements are mandatory. So the plain language— But no one has said that it prevents initiation of removal proceedings. Correct, Your Honor. There's no case that haven't analyzed specifically the wording of initiation of removal proceedings, but this court is in the best position to read the plain language of the statute and establish what that actually means. And if you look at 8 U.S.C. 1229— Didn't the proceedings begin against— There might have been defenses that could have been made because of what you say are defects in the NTA, but the proceedings started. Isn't that a common-sense reading of initiation of proceedings? Yes and no, Your Honor. The statute doesn't say that it's when the case starts in court, because if you look at 8 U.S.C. 1229, it's called Initiation of Removal Proceedings. But then if you look at 8 U.S.C. 1229A, it's called Removal Proceedings. So just looking at those titles, that implies that the initiation hasn't been removed because they have already been initiated. And once you get to the court, then that's a different step. But there's a step completely that happens before that, and that's at the issuance of the Notice of Peer. So just looking at the plain language of the statutes, you can infer that initiation of removal proceedings happens when the NTA is being issued, and then removal proceedings begins when that Notice of Peer is filed with the court. This isn't a jurisdictional argument that the court didn't have jurisdiction to hear the case at all, because removal proceedings did commence, and he was in court. But there's a whole statutory section that talks about the issuance of the Notice of Peer, which is titled Initiation of Removal Proceedings, which is tied to the 212H waiver. So we're just asking the court to do a plain language of the statute. It's not that simple. You just explained that it's not clear. Even if this court were to believe that it's ambiguous, yes. Then we can't do plain language then. Then the legislative intent and regulations still support our position, because if you look at legislative history, right, and when the IRIRA was created, there was two big goals, harder consequences of criminal acts, and then removing the person as fast as possible when they commit those acts. So if you look at the two statutory sections together, INA 212H talks about Initiation of Removal Proceedings, and then when we look at 1229, that talks about the title, when you tie them together and you replace Initiation of Removal Proceedings with 1229, and you read the statute as a whole, you really understand what Congress really meant. Why can't you have an Initiation of Removal Proceedings without an adequate NTA? Because the NTA was effective, Your Honor. No. What's the purpose of the adequate NTA? What's the purpose of the NTA saying the hearing will be X day before X judge? What's the purpose of that? Well, Your Honor, the Supreme Court has established that that's an essential element. What is the purpose of that? To notify the person. Oh, I understand that. Why do you tell the alien that the hearing is going to be on a certain day before a certain judge? Why does it do that? It places a person on notice. Does it? Because it's elementary due process. Yes, Your Honor, because you're – A lot of cases are filed in the district courts which don't have subject matter jurisdiction or they don't get service over somebody, but they're still initiated before the court, are they not? That was a part of the ceremonial argument. They were filed and say, told the statute of limitations. Yes, Your Honor, and in this case, this isn't a jurisdictional issue. It's not whether the case began in court. The reason for the NTA time and place where it's going to occur is because he's entitled to a fair hearing, and he can't have a fair hearing unless he knows those things. Yes, Your Honor. If he's not put at notice of where – At the end of the day, a defective NTA is a defective NTA. The Supreme Court has established that. This court has established that in Perez-Sanchez. Yeah, but it doesn't void everything that follows. We've made that pretty clear in cases after the Supreme Court's decisions. On jurisdiction, yes, Your Honor, but not on issuance. This is a different statutory section. We're talking a step right before it gets to the court. We're not talking about the judge and the case initiating with the court. There's a whole statutory section that occurs before that. And again, going back to the legislative intent, if you look at subsection D, right, removing people as fast as possible, making the bar as hard as possible for people to obtain relief, subsection 8 U.S.C. 1229D specifically says, in the case of an alien who is convicted of an offense which makes the alien deportable, the attorney general should initiate removal proceedings as fast as possible. So if you look at them together, subsection D says, hey, government, you have to start removing proceedings as fast as possible when this person is deportable, which we have at hand as a 237 proceeding. By the way, there's all these requirements that you need to include to initiate removal proceedings because it's going to stop this person from obtaining this relief. It's going to stop that clock. It's going to initiate removal proceedings. They're going to be barred from obtaining this waiver. The case at hand, that didn't happen. The government began removal proceedings and initiated the document. They didn't include all the requirements under the statute, and it doesn't bar this person under or didn't stop the clock for the purposes of the INA 212A. Let's assume that equitable tolling based on Nix, Chavez, and Pereira gets you beyond the time bar for a normal motion to reopen before the BIA. How does it help you with the number bar? Equitable tolling still resolves that, Your Honor, because of the changed circumstances, and if we prove that and he didn't... No matter how many numbers are involved? If this were your client's seventh motion to reopen because Nix, Chavez, and Pereira just came out two weeks ago, you'd make the same argument? It doesn't matter how many have come before? Yes, Your Honor. That's the case that we have at hand. Because a new law was established by Nix, Chavez, then we get the opportunity to pursue the right because the Supreme Court explained the law in Nix, Chavez that the government hadn't been doing for so many years. And I want to really point... Well, then there's no end to motions to reopen based on new Supreme Court decisions, right? It doesn't matter how long? If the government hadn't moved to remove Mr. Hamilton now, and Pereira and Nix, Chavez came out 10 years from now, and he had remained under the radar, you could file a motion to reopen 11 years from now and make the same arguments? If the government failed to follow the law, just as in those cases, and the Supreme Court would say, yes, the clock didn't stop, then in this instance, yes. This isn't a very... The BIA and the BIA is required to grant, in your view, required to grant a motion to reopen under those circumstances as well. Under an abusive discretion standard, we would have to reverse that too. If the de novo standard is met, Your Honor. If under the law, the Supreme Court, and in that case, you meet the standard under the law that they did. They failed to consider the law fully like they did here. But see, but part of the issue here is that you need an extension of Nix, Chavez, and Pereira to win your argument on whether or not the defective NTA allowed him to accrue status in the country. Those cases didn't address that. It would be a different scenario, I think, if Nix, Chavez, or Pereira answered that question directly and you've got a case that says, hey, in my particular case, I'm entitled to relief. But you need an extension of those cases. You need to broaden the sweep of those cases to win. It wouldn't be considered an extension, Your Honor, of really much compliance with what the Supreme Court has already said. That's an advocate's perspective and a good one, but... Those cases don't address the question presented here. Correct, Your Honor. But you've got to look at that legislative history of why Congress intended to left it more broad. And it's because of that subsection D of the statute because if it would have just leave it for subsection A of 1229, it would render that section meaningless. We've taken you over your time, but I want to give you your full time for rebuttal. So we'll talk to you in a couple of minutes. Thank you, Your Honor. Ms. Corliss. Good morning. May it please the Court, Lindsay Corliss for the respondent. This court should deny the petition for review. The agency properly denied petitioner's number-barred, untimely motion to reopen. This case hinges on a single legal issue, which is when did petitioner's period of continuous lawful residence end for purposes of a waiver of inadmissibility under 8 U.S.C. Section 1182H? As always, statutory analysis begins at the statute. And in this statute, the relevant provision bars any noncitizen from obtaining such a waiver if he has, and I'm going to quote from the statute, not lawfully resided continuously in the United States for a period of not less than seven years, immediately preceding the date of initiation of proceedings to remove him from the United States. Now that sounds a little bit convoluted because it is written in the negative, but all the statute is asking us to do is to look at the date of initiation of proceedings to remove him, that's the operative phrase, go back seven years and see if he has met that period of continuous residence lawfully. In this case, we know that he did not enter until July 2009, so in order for him to get that period, he would have had to be here, and they would not have had to initiate proceedings until July of 2016. But we know that he was already in court, in an immigration court, entering his pleadings, being found removable, all in March of 2015. Now, in this case, the agency properly found that those proceedings actually were initiated with the filing and service of the notice to appear in February of 2015. And that really comports with this court's decision when it denied Petitioner's prior petition for review. In his prior petition for review, Petitioner specifically argued that his proceedings were not validly initiated against him because his notice to appear lacked a time and date of his first hearing. This court, specifically using the language that he used, validly initiated, rejected that argument and found that even a defective NTA does validly initiate proceedings. It does vest jurisdiction. But his argument now, whether valid at the end of the day or not, is that that decision of ours preceded both Pereira and Nix-Chavez, and that those two decisions have sort of changed how we have to look at the phrase initiation of removal proceedings. Okay. Well, so neither of those cases actually addressed initiation of removal proceedings. They did, however. I agree, but one of them dealt with the stop-time provisions of a separate... Yes. And when you say that this would require an extension of those holdings, that is correct because those statutes... I mean, those cases, both Pereira and Nix-Chavez, were both addressing the cancellation of removal statute, which is a distinct form of relief with distinct requirements. And if you look at the actual decisions from Pereira and Nix-Chavez, the court was very specific about how narrow its holdings should be interpreted to be. Pereira uses the word narrow holding more than three times in the first two paragraphs. And they state that this is a decision about the intersection of two specific statutes, the cancellation of removal statute at 8 U.S.C. section 1229BD1, which is the stop-time rule, specifically refers back to 1229A1, which is where the requirements for notice to appear are. And since the cancellation of removal stop-time statute specifically refers back to that other part in the other statute about a notice to appear, that is why the court found that all of those requirements have to be there in order to stop the time. And they state it again and again, this is a narrow holding. It has been almost eight years since Pereira has come out, and the courts have not, none of the circuit courts have been expanding this beyond that. The most logical way that they could have expanded it would have been to say that jurisdiction didn't vest. They never did that. When Nix-Chavez came out, the Supreme Court was also similarly very narrow in its holding. They described it as, this is Pereira Part 2. We're answering the same question that they believed they had answered before. And this time they're doing a very specific textual analysis of the cancellation of removal statute. They focus, a lot of their analysis is focused on what the Article A in A Notice to Appear means in the context of that one provision of the cancellation of removal statute. That's a phrase that doesn't appear in the statute at issue here, the waiver of inadmissibility statute. To your knowledge, have any circuits addressed whether or not that extension of Pereira-Nix-Chavez is right, wrong, inappropriate, unwarranted, etc.? In the context of a waiver of inadmissibility? Yes. No, not in the context of a waiver of inadmissibility. So this is novel to this court. But I just wanted to quickly address a couple things that Petitioner said. So I'm aware that there is a title, that the title of Section 1229 is Initiation of Proceedings. This is not a definitional statute. The definitions occur at USC 1101. This is actually just a title. And then underneath it, it describes all the sorts of things that happen when a proceeding commences. So yes, A1 is the Notice to Appear and the requirements under the Notice to Appear. But you're also going to see at Section B, under the same title, is instructions about securing counsel. Certainly there are times when somebody has already been appearing in immigration court and they're then being given extensions in order to allow them to find counsel. But proceedings have still been initiated against them. Same thing, Section D is about the DHS initiating prompt removal of noncitizens. Certainly we do not, there's never been a requirement that DHS actually seek to physically remove someone simply because proceedings have been initiated against them. These are just the sort of things that are happening in the beginning of a proceeding. And the language, so even though it's titled Initiation of Proceedings in that section, which includes all of this different information, you don't see the word initiate within that whole statute other than in the title. There's no statement that says, in order to initiate proceedings, the Notice to Appear has to be filed or anything like that. Historically, all of the courts have seemed to say that when jurisdiction vests in a proceeding that they have been initiated. But this court is not required to find specifically that service. Yet we've, in the Herrera-Nix-Chavez world, we've held that a defective NTA doesn't deprive an immigration judge of jurisdiction in the normal sense of the word, at least in some circumstances. Yes, it's a claims processing rule. Right, but yet the Supreme Court ruled, I forget which one of the two cases it was, that it did affect the stop-time rule.  The argument by Mr. Hamilton is that the same logic should carry over to waiver of inadmissibility under 1182H. The problem that he's going to run into is that there's a difference in the language of the two statutes. The language of the stop-time rule at 1229D1 specifically states that the time stops with the issuance of a notice to appear under 1229A1. So they actually give the citation and refer directly back to the notice to appear requirements. In this case, we're dealing with a statute that does not refer back to the notice to appear at all. All it says is the date of initiation of proceedings to remove him from the United States. Is that in 1182H or a subsection of H? 1182H, it's at the very end of it. It's during the bars. They have the requirements for it and then at the end it says who's barred from it if you are admitted as a lawful permanent resident and you've been convicted of an aggravated felony and then they give this language where they say or if you have not resided, continuously resided lawfully in the United States for a period of not less than seven years immediately preceding the date of initiation of proceedings to remove the non-citizen from the United States. So it's at the end of that long H paragraph? Yes. Okay. So if the court doesn't have any more questions for me then we will rest and thank you for your time. All right. Thank you very much. I want to really emphasize the fact that we are not making a jurisdictional argument. I believe that the 1229 and 1229A... Nobody thinks you are. Yeah, I just want to make a difference between the two statutes because jurisdiction is once the case gets to court. Your argument is that based on the logic of Pereira and Nix-Chavez, the defective NTA in this case did not preclude Mr. Hamilton from accruing status in this country for purposes of eligibility for a waiver of inadmissibility. Yes, Your Honor. Under 1229. That's the argument, right? Yes. And I want to... I didn't have time to address it before, but the regulation support, even if we're considering ambiguous, the regulations really clear up the language. If you look at 8 CFR 239.1, titled Initiation of Removal Proceedings, that regulation talks about who can issue and service. So it's literally tied to the word of issuance of the notice to appear. If you look at 8 CFR 1003.14, jurisdiction and commencement of proceedings. So the regulations separate initiation with commencement once the case is in court. And it says commencement and jurisdiction events once the NTA is filed with the court. Then you look at 8 CFR 1239.1, notice to appear, subsection A, it says commencement. But usually a defect in process doesn't prevent something from having been started. It may affect what happens at the end of the day, but it doesn't affect something from being started. So you have a- It doesn't stop the clock. It didn't stop the clock, Your Honor. And that's the point. It didn't initiate proceedings legally. A defective NTA is a defective NTA. And I want to point the court in- Which doesn't deprive a court of jurisdiction- Correct. An immigration court of jurisdiction to go forward. Correct. Jurisdiction happened and the case- How can the proceeding keep going if it was never initiated? It wasn't initiated for the INA 212H, Your Honor, because it was a defective NTA. I want to point to the decision of Campos Chavez, the Supreme Court, last year. Again, addressing this issue in that specific case, it's in absentia orders. But I do want a point of language of the court, which is very important for our case. The majority start saying, describing the facts of the case, the government initiated removal proceedings by serving an NTA. And then dissent in three instances really emphasizes our point. The first instance, no one disputes that 1229A establishes a mandatory process for the initiation of removal proceedings that compels the government to provide written notice to any non-citizen it intends to remove. Then it continues to say, an NTA under 1229A is indispensable. And this particular form is written notice that initiates the removal proceeding process as a matter of law. And then the third one, I know I'm running out of time, Your Honor, but this one is the most important one. You're over your time, but you can finish that and wrap up. Thank you, Your Honor. And then the court says, Congress put the burden on the government to send complete notices to appear to non-citizens facing removal every time it initiates removal proceedings. So the Supreme Court is tying the defective NTA to initiation of removal proceedings. The government initiated removal proceedings with a defective NTA. It did not stop the clock. And we're asking a plain reading of the language, legislative history, and the regulations would support our position. We do ask this court to grant this petition, remand the case for the BIA to give reasonable consideration to the argument which they failed to do. Thank you, Your Honor. Thank you both very much. Thank you.